# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:13-cv-00180-MR

| | |
|---|---|
| MICKEY D. YARBOROUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 14].

**I. PROCEDURAL HISTORY**

The Plaintiff Mickey D. Yarborough filed applications for Social Security disability insurance benefits and supplemental security income, alleging that he had become disabled as of October 1, 2009. [Transcript ("T.") 153-64]. The Plaintiff's application was denied initially and on reconsideration. [T. 52-102]. Upon the Plaintiff's request for a rehearing, a hearing was held before an Administrative Law Judge ("ALJ") on February 10, 2012. [T. 31-51]. On February 27, 2012, the ALJ issued a decision

denying the Plaintiff's claim for benefits. [T. 11-30]. The Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d

1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix

3

1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fifth step.

## IV.    THE ALJ'S DECISION

On February 27, 2012, the ALJ issued a decision denying the Plaintiff's claim.  [T. 11-26].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009, and that he had not engaged in substantial gainful activity since his alleged onset date of October 1, 2009.  [T. 16].  The ALJ then found that the medical evidence established the following severe impairments: degenerative disc disease, degenerative joint disease, generalized osteoarthritis, obesity, an affective

disorder, and a history of substance abuse.  [Id.].  The ALJ determined that none of Plaintiff's impairments, either singly or in combination, met or equaled a listing.  [T. 17-8].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform medium work except that he was limited to unskilled work tasks with only occasional postural activities; no climbing of ladders, ropes or scaffolds; only frequent manipulative maneuvers bilaterally; and no concentrated exposure to hazards.  [T. 18-25].  He then determined that the Plaintiff was unable to perform his past relevant work as a brick mason and a handy man.  [T. 25]. Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform.  [T. 25-26].  He therefore concluded that the Plaintiff therefore was not "disabled" as defined by the Social Security Act from October 1, 2009, the alleged onset, through the date of the ALJ's decision.  [T. 26].

## V. DISCUSSION[1]

In this action, the Plaintiff challenges the ALJ's residual functional capacity (RFC) determination, arguing that it was not supported by substantial evidence and that it failed to comply with the Social Security Administration's rulings on obesity and credibility. The Plaintiff further argues that the ALJ erred in relying on vocational expert testimony which posed an unresolved conflict with the Dictionary of Occupational Titles ("DOT") and which exceeded the established residual functional capacity. The Court will address each of these assignments of error in turn.

### A. RFC Determination

The Plaintiff first argues that the ALJ's RFC determination did not adequately consider his obesity, as required by SSR 02-1p.[2] Contrary to the Plaintiff's argument, however, the ALJ in the present case properly considered Plaintiff's obesity in determining his RFC, and there is substantial evidence to support the conclusions that he reached.

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] SSR 02-1p provides that the ALJ must consider a claimant's obesity in determining whether, *inter alia*, his impairments prevent him from doing work that exists in significant numbers in the national economy. SSR 02-1p further recognizes that the combined effects of obesity with other impairments may be greater than might be expected without obesity. Id. As with any other impairment, the ALJ is required to explain whether the claimant's obesity creates any physical or mental limitations. Id.

In his decision, the ALJ repeatedly referred to Plaintiff's obesity and specifically found it to be a "severe" impairment. [T. 16, 17, 21, 22]. Moreover, the ALJ gave significant weight to the opinion provided by state agency medical consultant Lillian Horne, M.D., who noted Plaintiff's obesity but ultimately concluded that the Plaintiff's impairments did not give rise to any limitations beyond those that the ALJ included in his RFC finding. [T. 23, 74-75]. As is discussed in greater detail below, Dr. Horne's opinions are consistent with and supported by the medical evidence of record. Even if the ALJ did not explicitly state how he took into account the Plaintiff's obesity when reaching his conclusions, it is evident from his decision that he implicitly considered this impairment by adopting the conclusion of reviewing physicians who directly addressed Plaintiff's obesity and found it imposed no additional impairments. As such, any error of the ALJ in failing to explicitly discuss in the decision the effects of the Plaintiff's obesity was harmless. See McKinney v. Astrue, No. 1:11-cv-00199-MR-DLH, 2012 WL 6931344, at *3 (W.D.N.C. Dec. 11, 2012) (Howell, M.J.), adopted by, 2013 WL 300822 (W.D.N.C. Jan 25, 2013) (Reidinger, J.).

With respect to the Plaintiff's limitations on handling and fingering, the Plaintiff contends that the ALJ erred in finding that the Plaintiff could engage in "frequent" manipulative work functions. [Doc. 9-1 at 19]. The

7

Court finds no error in this regard. In determining the Plaintiff's ability to manipulate objects, the ALJ specifically considered Plaintiff's hand impairment, including his problem with Dupuytren's contracture, but also noted the reports of examining physicians that the Plaintiff was able to use his hands for fine manipulation; that his ability to pinch, grasp, and manipulate small objects was intact; that his ability to manipulate large objects was intact; that he had good grip strength; and that he had good muscle strength. [T. 19, 21; T. 250, 290, 339]. The ALJ properly accounted for the Plaintiff's hand limitations by restricting him to only frequent (as opposed to constant) handling and fingering. [T. 18].

Next, the Plaintiff challenges the ALJ's assessment of his postural limitations. Specifically, the Plaintiff argues that the ALJ failed to properly weigh – either alone or in combination with Plaintiff's obesity – the observation by consultative examiner Antoinette Wall, M.D., in January 2011, that Plaintiff "could squat to the full extent, but was unable to rise and needed to change position and push up on one knee while using the table to push up with his hand in order to rise." [Doc. 9-1 at 19-20 (citing T. 290)]. In fact, the ALJ explicitly cited Dr. Wall's observation. [T. 21]. This observation, however, is not consistent with other medical evidence of record, including the observation by a prior consultative examiner that

Plaintiff was "able to squat and rise reasonably well" [T. 250] and Dr. Horne's opinion that the Plaintiff was limited to only frequent squatting or crouching. [Tr. 74]. Based on this evidence, the ALJ's assessment that the Plaintiff could squat/crouch "occasionally" [T. 18] was supported by substantial evidence and was not in error.

The Plaintiff further argues that the ALJ was "silent" as to the limitations imposed by the Plaintiff's congenital fusion in his cervical spine. [Doc. 9-1 at 19]. Contrary to the Plaintiff's argument, however, the ALJ specifically noted that the Plaintiff had a "congenital appearing anterior fusion at C2 and C3" [T. 20], and he found that the Plaintiff's degenerative disc disease was a severe impairment that has "more than a minimal effect upon [the Plaintiff's] ability to engage in work-related activities" [T. 16]. Ultimately, however, the ALJ concluded that this impairment did not give rise to any limitations beyond those identified in the RFC. [T. 18]. This conclusion is substantially supported by the findings of Dr. Horne. [T. 70, 75]. The Plaintiff has not identified any further limitations caused by this particular impairment.

Finally, the Plaintiff argues that the ALJ failed to properly account for the assertions that the Plaintiff himself articulated concerning his impairments. [Doc. 9-1 at 11-14]. The ALJ found the Plaintiff's testimony

9

only partially credible, as his statements were inconsistent with the rest of the evidence of record, including his own prior statements.[3] [T. 23]. The ALJ did not err in this regard. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."); see also SSR 96-7p (The adjudicator must consider . . . [t]he consistency of the individual's own statements.").

For these reasons, the Court concludes that the ALJ properly considered the Plaintiff's obesity pursuant to SSR 02-1p and properly assessed the Plaintiff's RFC.

### B. Vocational Expert Testimony

In his decision, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [the Plaintiff] can perform." [T. 25]. The ALJ based that finding on the testimony of a vocational expert ("VE") provided in response to a question that the ALJ posed concerning a hypothetical person with the Plaintiff's vocational characteristics and the same limitations set forth in the RFC finding. [T. 46-47]. The Plaintiff

---

[3] For example, the Plaintiff reported to the Agency in March 2011 that he had "not had a full night[']s sleep since 2000" [T. 214], notwithstanding his prior admission in December 2009 that he was able to sleep well four or five nights a week [T. 248]. Additionally, in April 2010, the Plaintiff tested positive for marijuana use on the same date that he denied such use to one of his medical providers. [T. 268].

argues that this finding was improper both because the VE's testimony was "too vague" and because the VE's testimony conflicted with the DOT. [Doc. 9-1 at 20].

The VE identified three jobs that a person such as the Plaintiff could perform: packer, janitor, and laundry worker. [T. 46-47]. The VE testified that over 2.7 million such positions exist in the regional and national economy [Id.]. The Plaintiff argues that this testimony was insufficient because the VE failed to cite the specific sections of the DOT that describe the positions that he identified. [Doc. 9-1 at 22]. The VE's failure to identify the specific DOT numbers for the identified positions, however, does not render his testimony so vague as to be unreliable. See Mosteller v. Astrue, No. 5:08-cv-00003RLV-DCK, 2010 WL 5317335, at *4 (W.D.N.C. July 26, 2010) (Keesler, M.J.) (recommending affirmance of denial of benefits notwithstanding fact that VE did not cite specific DOT sections describing pertinent positions), adopted by 2010 WL 5340600 (W.D.N.C. Dec. 20, 2010) (Voorhees, J.). This is especially true in this case since the Plaintiff raised no contemporaneous objection to the VE's testimony at the hearing.

As for the Plaintiff's argument that the VE's testimony conflicted with the DOT, SSR 00-4p provides that "[w]hen there is an *apparent* unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit

a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." (emphasis added). No apparent unresolved conflict exists, however, where the VE testifies "on the record that his opinions were *consistent* with the DOT." Mosteller, 2010 WL 5317335, at *4 (emphasis in original). Here, the VE testified that his opinions were consistent, and the Plaintiff, who was represented by counsel, elected not to examine the VE concerning the DOT codes. See id. at *5 ("Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.") (quoting Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000)).

The Plaintiff argues that the DOT includes 26 occupations that contain the term "packer" or "packager," and that 14 of these occupations conflict with the ALJ's RFC finding. [Doc. 9-1 at 23]. According to the Plaintiff's argument, then, there are at least 12 "packer" or "packager" occupations which fall within the RFC determination of the ALJ. Thus, notwithstanding the Plaintiff's argument, there are still jobs in significant

numbers in the national economy that he could perform.[4] Accordingly, the Court finds no reversible error in the ALJ's reliance on the VE's testimony.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability from the date of onset through the date of the ALJ's decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**. This case is hereby **DISMISSED WITH PREJUDICE.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 20, 2014

Martin Reidinger
United States District Judge

---

[4] Because the Court is satisfied that there are significant jobs available to the Plaintiff under the packer/packager classification, the Court need not address the other positions identified by the VE.